protect the property against the claims of the judgment creditors. He had no power to prevent the sheriff from selling, and he cannot be required to account for the goods so sold. He must account for all the other property which came to him as assignee.

Decree to be entered in accordance with this opinion.

[NOTE. This case was subsequently heard in the district court upon exceptions on behalf of the respondents on the master's report, and upon motion of the complainant for final decree. The respondents (the sheriff and the judgment creditors) objected to the entering of the decree against them, and claimed that in the former decision of the court there was error; that no case for equitable relief was made out against them. The exceptions were overruled. the report confirmed, and a final decree for complainant entered. 4 Fed. 318. Certain of these respondents perfected an appeal from this decision to the circuit court. Before the hearing of the appeal, and after the time for appeal had elapsed, one of the creditors, Wellstern, Meyer & Ochinger, against whom a decree for $3,109.24 had been entered, moved to open the decree, so that they might be heard upon the merits of their case. They were served with process, but never filed an answer or made any defense. It was claimed that this happened by mistake and misunderstanding of counsel: that they stood upon the same ground and had the same defense as Cowdin & Co. Their motion was denied, but says Judge Choate: "The case is clearly one in which the court would gladly give these parties relief if it had the power. They are apparently in the position of being called on to pay what other defendants, upon the same state of facts, have been held not liable to pay." 1 Fed. 378. Circuit Judge Blatchford delivered the opinion upon appeal, in which he said: "All the points urged by the appellants appear to have been carefully considered by the district judge in his decision. So far as the main questions at issue are concerned, I think they were all properly disposed of except the question of interest." The only question involved in the interest was as to the time for which it should run. 4 Fed. 324.]

---

## Case No. 8,363.

### LINDER v. LEWIS.

[See 4 Fed. 318.]

---

## Case No. 8,364.

### Ex parte LINDO.

[1 Cranch. C. C. 445.][1]

Circuit Court, District of Columbia. Nov. Term, 1807.

WITNESS—ANSWER TENDING TO CRIMINATE.

A witness must answer whether he saw the defendant at a public gaming-table, inasmuch as the answer cannot criminate or tend to criminate the witness himself.

Rule to show cause why an attachment of contempt should not issue against a witness for not answering this question by the grand jury, "Did you within the last three months see Richard Lewis play at any public gaming-table within the county of Alexandria?"

The witness [Abraham Lindo] objects that

1 [Reported by Hon. William Cranch, Chief Judge.]

it may tend to criminate himself, by showing that he was present at a public gaming-table, and may induce Lewis to prosecute him.

Mr. Swann, for the witness, cited 1 Morgan, Essays, 438; 2 Hawk. p. 609, c. 46, § 20; 1 Atk. 539.

But THE COURT (DUCKETT, Circuit Judge, absent) decided that he must answer, inasmuch as the answer could not criminate nor tend to criminate himself. Whereupon he submitted to answer.

---

LINDO (GARDNER v.). See Cases Nos. 5,-231 and 5.232.

LINDO (GORDON v.). See Cases Nos. 5,-231 and 5,616.

LINDO (SKYREN v.). See Case No. 12,931.

LINDO (SNOWDON v.). See Case No. 13,-152.

LINDO (WELSH v.). See Cases Nos. 17,408 and 17,409.

---

## Case No. 8,365.

### LINDROP v. DALL.[1]

District Court, D. California. Oct. 5, 1868.

SHIPPING—MASTER — PUNISHMENT OF OFFENDERS —LIABILITY FOR PUNISHMENT WITHOUT INVESTIGATION.

[1. It is not a cruel or excessive punishment to keep two waiters ironed together for 10 hours for fighting in the cabin of a vessel.]

[2. A master who without investigating the circumstances unjustly causes a seaman to be punished for an offense he did not commit is liable though he did not act in a cruel or oppressive spirit.]

[This was a libel in personam by John Lindrop, a waiter on board the steamer Sierra Nevada, against the master, C. C. Dall, to recover for personal injuries.]

Thompson & Wilson, for libelant.

H. & C. McAllisters, for respondent.

HOFFMAN, District Judge. I do not perceive that the mode of punishment adopted by the master was either cruel in its nature or excessive in its degree, if the libellant had committed the offence for which he was punished. The master supposed that he had been fighting in the cabin with another waiter. He therefore caused the two to be ironed together, and kept them in that condition some nine or ten hours. It was demonstrated by actual experiment in court that persons confined in this way could sit down, and that their situation, though certainly uncomfortable, did not occasion any torture or severe suffering. Had the master taken any measures to investigate the truth of the charges against the libellant, and, after due inquiry, acted on the best information he could obtain, his justification would have been complete, even though he might have been mistaken as to the facts. But in this case he seems to have assumed that the libellant was in fault, and even that

1 [Not previously reported.]